106     446
22 SC   193

# Scranton Poor District *versus* Directors of the Poor of Danville and Mahoning.

1.  A man may gain a new settlement by residence and paying taxes in a
    new district, notwithstanding the fact that during the same time his
    wife, whom he had abandoned, was receiving relief as a pauper in the
    district of his former settlement.

2.  In such case an order is proper for the removal of the wife to the
    new settlement acquired by her husband.

3.  Where tax books are produced showing assessments upon a certain
    party which were marked "paid" by the collector, this is prima facie
    evidence of payment of tax, in a question as to the legal settlement of
    the party assessed.

April 28, 1884.   Before GORDON, PAXSON, TRUNKEY, STER-
RETT and GREEN, JJ.   MERCUR, C. J., and CLARK, J., ab-
sent.

ERROR to the Court of Quarter Sessions of *Montour county:*
Of January Term, 1884, No. 430.

This was, in the court below, an appeal by " The Scranton
Poor District," from an order of two Justices of said county
for the removal of Rosanna Coats, wife of Jerry Coats, from
the District of Danville and Mahoning to the Scranton Poor
District (late the Poor District of Providence, Lackawanna

county), and adjudging said district to be her last place of legal settlement.

The case was heard upon depositions before ELWELL, P. J., who filed the following opinion :

In 1855 Jerry Coats and Rosanna, his wife, were married, and from that time until 1869, lived together in Danville, in a house of the yearly value of more than ten dollars, leased by said Coats, the rent for which was paid by him. In 1869 Mrs. Coats became insane and a charge upon the Danville and Mahoning district, and was by the directors, with the knowledge and consent of her husband, removed to the State hospital for the insane at Harrisburg, and from that time until the 16th day of September, 1882, she was relieved, maintained and kept by the Danville and Mahoning district.

On the 16th of September, 1882, she was removed by the order from which this appeal was taken, to the Scranton district, which was adjudged to be her last place of settlement. Her husband's settlement being hers, the important question for consideration is, whether he had acquired a settlement in Scranton. In respect to that the facts appear to be, and are found, as follows :

When Rosanna Coats was removed to the hospital, the family of Jerry Coats consisted of himself, his wife and several children. After that time he did nothing towards the support of his wife, and has not to this time paid any part of the expenses of maintaining her. In 1875 Coats abandoned his family, left Danville and took up his residence in Scranton, and has continued to reside there from that time until now. Before he left Danville the directors of the poor endeavored to obtain from him some portion of the expenses of supporting his wife, but were not successful. After he left they had no knowledge of his whereabouts until some time in 1880. Application was made to him then to do something for her. Nothing was obtained but a promise, which was not fulfilled.

In order to show that Coats had acquired a settlement in the Scranton district, depositions were taken by the Danville district before a commissioner, under the rules of court. M. T. Lavelle, the city clerk of the city of Scranton, produced before the commissioner assessment books for the years 1877 and 1878, and stated that Jerry Coats was assessed as a laborer, valuation thirty dollars for each year, and the same for 1879. The board of revision raised the valuation to fifty dollars, and the tax was levied on that sum. W. W. Williams, one of the county commissioners of Lackawanna county, was sworn and produced before the examiner of the county assessments, for the years 1879, 1880, 1881, showing that Jerry Coats was in those three years assessed as a laborer, valuation

fifty dollars. No objection was made before the examiner to this mode of proving the assessments. If objected to at the time, certified or sworn copies might have been obtained. By not objecting at the proper time, the appellant consented to that mode of proof.

From the evidence it is found that Jerry Coats was assessed with his proportion of public taxes in the Scranton district for the years 1877 to 1881, inclusive.

In respect to the payment of taxes, evidence was given by B. R. Wade, collector of delinquent city and school taxes for Scranton for 1879 to 1882. He produced the books from the office of the city treasurer, showing the school and city taxes from the years 1879 to 1881, inclusive, by which it appeared that Jerry Coats was charged with seventy-seven cents city taxes and one dollar and ten cents school tax for each of these years. These taxes were not paid personally by Coats to the witness, but they were paid by the Lackawanna Iron and Coal Company out of the wages of Coats, he being engaged at labor for them. The witness does not remember the particulars of the payments, but finding on the margin of the books marked "paid" by himself with the date, according to his usual practice, the proof is deemed sufficient to establish the fact of payment. The tax of 1879 was paid on the 7th January, 1880. That of 1880 was paid December 4th of that year, and that of 1881 was paid July 3d, 1882.

In the year 1880 the name "Jerry Coats" appears on the duplicate in three different places, residence in each place different from the others. It does not appear that there was any other Jerry Coats in Scranton at any time. The Jerry Coats in question had resided there for six years. He was assessed with taxes from 1877. Inasmuch as but one person of that name could be found by the collector and the tax of that one was paid by the company where this Jerry Coats worked, the presumption is strong that he was the person who was assessed and paid the taxes.

In respect to the taxes of 1877 and 1878, the evidence is that the original books issued to the collectors for those years were returned into the treasurer's office, and that those charged to Jerry Coats are marked "paid." The collector for 1877–8 was in the City of Scranton when the depositions of other witnesses were taken, but he was not called to testify by either party.

The books on which the taxes were charged were official records; they were, by permission of the treasurer, produced by a witness before the examiner. The entry of the word "paid" by a collector opposite a charge of tax, is evidence against him. It is, in fact, official evidence of payment, made

by the proper officer, and by him placed as a charge against himself in the hands of the official to whom he must render account. Every presumption is in favor of the correctness of the return. In the case of Coxe *v.* Deringer, 28 P. F. S., 291, it was held that the words "paid before sale" on the treasurer's books was not evidence of such payment, being evidently an entry by the treasurer after sale. In Aukeny *v.* Albright, 8 Harris, 157, the letters "pd" on the treasurer's book were held not to be evidence of themselves of payment of the taxes before sale, the treasurer having testified that the practice of his office was to mark them after sale.

It often happens that taxes are paid to collectors when there is no receipt given, the tax payer relying upon the marking of the tax "paid" on the duplicate. Such entry unexplained, would be evidence against the collector, and between the taxpayer and the public is prima facie evidence of payment.

It is therefore found as fact that Jerry Coats, husband of Rosanna Coats, was assessed with public taxes in the City of Scranton from 1877 to 1881 inclusive, which were paid by him. It is contended, however, by the appellant, that even if this be so, he did not gain a settlement thereby, for the reason that during the same time his wife was receiving relief as a pauper from the Danville district.

It is argued in support of this position that it would be an unreasonable construction of the statute to hold that a person can gain a settlement by residence and paying taxes in a new district, if during the time either he or his wife or any member of his family, for whose support he is liable, receives support as a pauper in the town of his old settlement. That a settlement cannot be gained under such circumstances, has never been decided by any court in this State.

In Massachusetts and other eastern States it has been the subject of frequent consideration, and the decisions have been uniform that while a man is receiving relief as a pauper, he cannot gain a settlement anywhere, and that relief afforded to a member of his family for whose support he is liable, is, as a rule, aid to him: East Sudbury *v.* Waltham, 13 Mass., 460; Oakham *v.* Sutton, 13 Met., 192; West Newbury *v.* Bradford, 3 Metcalf, 428; Brewster *v.* Dennis, 21 Pick., 233; Taunton *v.* Middleborough, 12 Metcalf, 35. The Massachusetts statute provides that a settlement may be gained by ten years' residence and paying taxes for five of the years successively. It was held in Charlestown *v.* Groveland, 15 Gray, 15, that a man having a settlement in the Commonwealth could not acquire a new settlement by residence and paying taxes, if his wife was committed to a lunatic hospital on his complaint or with his knowledge, and is there supported without his paying the

10 OUTERBRIDGE.—29.

expense during the time necessary to give him a settlement. The doctrine of the Massachusetts courts is adopted by the courts of New Hampshire, 47 N. H. Reps., 179; Connecticut, Norwich *v.* Saybrook, 5 Conn., 384; Vermont, Wilmington *v.* Somerset, 35 Vt., 232; Maine, Clinton *v.* York, 26 Maine, 167. But the courts of the last-named State, while adopting as the law the decisions before stated as applicable to a case where a man has not abandoned his wife and family, hold that where that is the case, a new settlement may be gained by him, notwithstanding his wife or other members of his family may at the same time be receiving pauper support in the town of his former settlement: Hallowell *v.* Saco, 5 Me., 143; Raymond *v.* Harrison, 11 Me., 190; Eastport *v.* Lubec, 64 Me., 244; Bangor *v.* Wiscassett, 71 Me., 535.

The case of the Queen *v.* Shavington, 17 Adolph. and Ellis, N. S., 48, cited by counsel for the appellant, is based upon an Act of Parliament which provides that relief given to children shall be considered as relief to the parents. In this State there is no statute upon the subject. Our Act of 1836, P. D., 1154, enacts that "A settlement may be gained, in any district, by any person who shall come to inhabit the same, and who shall be charged with and pay his proportion of any public taxes or levies for two years successively." I think it better to adhere to the plain words of the statute than to interpolate qualifications and provisos, to make it accord with what is held to be law elsewhere, or even with our own ideas of what should have been inserted in the Act.

It is said that the reason why a settlement may be gained by performing the conditions named in the statute is that the district receives the benefits of the labor, the renting of premises, the payment of taxes or the fulfilling of the duties of a public office, and therefore should support the citizen who does these acts, if he afterwards becomes disabled. If this reason is to be allowed any force in giving construction to the statute, it should operate against the appellant district. For seven years Jerry Coats has been a citizen of Scranton. He has borne his share of the public taxes, and has employed none of his earnings to support the wife and family residing elsewhere, whom he had during all that time abandoned. His unfortunate wife was provided for in a charitable institution, under a statute of the State which enacts that the constituted authorities having charge of the poor shall have authority to send to the asylum insane paupers under their charge. If the fact of her being there at the expense of the district, where the husband had a settlement, rendered him a pauper or likely to become chargeable upon the district where he had taken up a new residence, the remedy for that district was by an

order of removal to the district where he had a settlement. By permitting him to remain and to perform all that the statute required to gain a new settlement, it is too late now for Scranton to object that such settlement was not gained. No fraud or collusion on the part of the authorities of Danville is alleged or proved. The case is simply that of a total and continued abandonment by a husband and father, of his wife and family for seven years, during which time he resided in another and distant district, where he performed all acts necessary to acquire a settlement there.

A person's domicile depends not upon the place where his moral or legal duties call him to reside, but upon the place where he actually does reside: Hallowell *v.* Saco, 5 Me., 144, in note. Did Jerry Coats reside in Scranton during the years when he paid taxes there? He was personally there. He had no home elsewhere. It follows that, according to the words of the statute, his settlement is there. We have great respect for the opinions of the able Judges whose decisions are cited above contrary to the conclusions to which we have arrived, and have been strongly inclined to follow the decisions of the Massachusetts courts, but have finally concluded to construe our statute to mean what its words import, and that if the doctrine of the cases relied upon by the counsel for the appellant is to be held here, the Supreme Court should be the first to announce it.

The appellants submitted, inter alia, the following points:

6. There is no evidence by which the court may find that Jerry Coats, husband of Rosanna Coats, the pauper, was settled in the Scranton poor district at the time of the order of the removal, from which this appeal is taken.

7. That in 1869 Jerry Coats was settled in the poor district of Danville and Mahoning, and that his wife, Rosanna Coats, at that time became insane, and became chargeable upon, and received relief from, the said the poor district of Danville and Mahoning as a pauper, and then and there, with the knowledge and consent of the said Jerry Coats, the said Rosanna Coats, his wife, was committed to and supported in the asylum by the said the poor district of Danville and Mahoning, and remained therein so supported by and chargeable to the said poor district during the years 1877, 1878 and 1879, and up to or about the 16th day of September, 1882, the date of the order of removal from which this appeal is taken; and that as matter of law neither the said Jerry Coats nor the said Rosanna Coats, his wife, by derivation from him could acquire in the Scranton poor district a settlement during such period, while the said Rosanna Coats was so chargeable to and receiving relief from the said the poor district of Danville and

Mahoning, by the payment of taxes in the said the Scranton poor district.

8. That as matter of law the said Rosanna Coats has acquired no settlement by derivation from her husband or otherwise in the Scranton poor district, and that the order of removal should be reversed, the said Rosanna Coats being unduly removed to the said the Scranton poor district.

The court answered these points as follows: "Refused, for reasons set forth in the foregoing opinion."

The following decree was entered: "And now, September 17, 1883, it is adjudged that the order of removal be affirmed, and that the costs and expenses be paid by appellant." The Scranton poor district thereupon took this writ, assigning for error the refusal of the above three points, and the said decree.

*R. W. Archbald, S. W. Edgar* and *Edward H. Baldy*, for the plaintiff in error.

*Grier & Hinckley*, for the defendants in error.

The judgment of the court was filed May 19, 1884.

PER CURIAM. For reasons given in the opinion of the learned Judge who tried this case in the court below, we affirm this case.

Judgment affirmed.