# Schuylkill County Directors *v.* Jackson Township Overseers, Appellants.

*Poor law—Order of removal—Appeals—Agreement of counsel.*

An appeal for a removal of paupers will not be set aside on the ground that the attorney for the appellant assented to the granting of the order, where it appears that while the attorney agreed that the order might issue, he did so for the purpose of bringing the question of law involved in the case to a final and conclusive adjudication by the quarter sessions without unnecessary delay and expense; and this is especially so where it appears that no motion to quash the appeal was made, that the parties agreed upon a statement of facts, and that the court finally adjudicated the question in controversy.

*Poor law—Settlements—Illegitimates—Removal of mother.*

Prior to the Act of July 10, 1901, P. L. 639, the settlement of an illegitimate did not follow the mother when she changed her settlement.

Where an illegitimate does not remove with his mother to another county, but remains in the poor district where he was born, and becomes a charge thereon before his mother acquired another legal settlement, and before the passage of the act of July 10, 1901, the removal of the mother and her acquisition of another settlement, does not change the settlement of the illegitimate.

Argued Oct. 25, 1905. Appeal, No. 116, Oct. T., 1905, by defendants, from order of Q. S. Northumberland Co., Sept. T., 1904, No. 22, overruling order of removal in case of Directors of the Poor and of the House of Employment of Schuylkill

County v. Overseers of the Poor of Jackson Township, North-umberland County.  Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.  Affirmed.

Appeal from order of removal.  Before AUTEN, J.

The parties agreed upon the following case stated :

1. Emma J. Kembell was born, raised and had a legal set-tlement in Jackson township, Northumberland county, and whilst a single woman was delivered of a male bastard child, in said township of Jackson, Northumberland county, on or about October 11, 1888, which said bastard child is known by the name of Harrison Cleveland Kembell, and had always resided in said township of Jackson.

2. That the said Harrison Cleveland Kembell became a charge upon the poor district of Jackson township, aforesaid, on or about March 22, 1898, as a pauper by regular proceed-ings had for that purpose and has been maintained as a pauper by Jackson township down to the present time.

3. The said Emma J. Kembell, the mother of said bastard, on or about the beginning of March, 1898, entered in and was employed for weekly wages as a housekeeper for a certain Elias Klinger, in Upper Mahantongo Township, Schuylkill county, being part of the Schuylkill county poor district, and continued in the said employment until February 22, 1900, at which time she, the said Emma J. Kembell, was lawfully mar-ried to her employer, Elias Klinger, pursuant to a marriage license issued by the proper officer of Schuylkill county.  The said Elias Klinger is not the father of the said Harrison Cleve-land Kembell.

4. After the said marriage, the said Emma J. Kembell be-came known as Emma J. Klinger.  The said Elias Klinger being at the time of said marriage the administrator of the estate of a former wife of his, and as such administrator sold certain real estate to her, the said Emma, on or about May 3, 1900, for the consideration of the sum, of $360 and made a deed to her conveying the same to her in fee, and that the said Emma and her said husband dwelled upon it since then.

5. The said Emma J. Klinger was immediately assessed with all taxes such as are levied for county and other purposes, and paid the same to the proper collectors ever since she became

the owner of the said premises; the said premises being situated in Upper Mahantongo Township, Schuylkill county.

6. The proceedings in this case were regularly commenced by information by the overseers of the poor of Jackson township poor district before a justice of the peace residing outside of the said township of Jackson, and at the hearing the said justice called another justice of said county, as provided by law, and the two said justices adjudged that the place of settlement of the said Harrison Cleveland Kembell was in the poor district of Schuylkill county, and granted an order of removal for the said Harrison Cleveland Kembell to the poor district of Schuylkill county. The said order of removal or a copy with the findings of the said justices, is attached to the appeal entered to the number above mentioned, and the same is made a part of this case stated.

*Error assigned* was order overruling order of removal.

*S. B. Boyer*, for appellant.—The order should have been sustained : Nippenose Twp. Overseers v. Jersey Shore Overseers, 48 Pa. 402; Scranton Poor District v. Danville Poor District, 106 Pa. 446 ; Commissioners of the Rouse Estate v. McKean County Poor Directors, 169 Pa. 116; Burrell Twp. v. Pittsburg Guardians of the Poor, 62 Pa. 472 ; Toby Twp. Overseers v. Pine Twp. Overseers, 19 Pitts. Leg. Jour. 73 ; Lower Augusta v. Selinsgrove, 64 Pa. 166; Wayne Twp. v. Jersey Shore, 81 *Pa. 264.

*W. F. Shepherd* and *William W. Ryon*, for appellees, cited: Limestone Twp. Overseers v. Licking Twp. Overseers, 1 Penny. 475 ; Buffalo Twp. v. Lewisburg Borough, 1 Pa. C. C. Rep. 121 ; Overseers of the Poor of Lewisburg v. Overseers of the Poor of Milton, 18 W. N. C. 141 ; Poor District of Lock Haven v. Poor District of Chapman Township, 22 W. N. C. 114; Brady Township v. Clinton Twp., 1 Pa. C. C. Rep. 127.

OPINION BY RICE, P. J., December 11, 1905:

This case came into the court below by appeal of the directors of the poor of Schuylkill county from an order of re-

moval issued by two justices of the peace upon the information of the overseers of the poor of Jackson township, Northumberland county. It is contended that the appeal was improperly taken, and that the order of removal should have been confirmed because the attorney for the former district, by writing indorsed on the copy of the notice of the hearing before the two justices, assented to the granting of the order. An examination of that paper shows that, while the attorney agreed that the order might issue " the same as if the facts," set forth in the information, " were legally and regularly proven," he did not expressly admit that they established the legal settlement of the pauper in the district he represented, but only that " the only question in the case is a question of law arising on the facts." The evident purpose was to bring this question of law to final and conclusive adjudication without unnecessary delay and expense. It would require a strained construction of the paper to hold that it precluded the district he represented from the right to appeal, and to have the question adjudicated by the court, even though it be assumed that the attorney had authority to bind the poor district by an agreement to that effect. Moreover, this was not the construction which the parties put upon the paper. No motion to quash the appeal was made, but the case was brought to hearing before the court upon an agreed statement of the facts, which concluded as follows : " The court is to decide and ascertain the legal settlement of the said Harrison Cleveland Kembell, whether the same be in Jackson township poor district or in the Schuylkill poor district on the foregoing facts, and to affirm or discharge the order of removal. The costs to follow the finding or judgment, and each of the parties reserves the right to appeal to a court of error." The court was clearly right in holding that it had jurisdiction to decide the question above presented as to the legal settlement of the pauper, and to affirm or discharge the order of removal in accordance with its decision of that question, notwithstanding the foregoing assent of the attorney to the issuing of the order.

The 11th section of the act of June 13, 1836 declares that every illegitimate child shall be deemed settled in the place where the mother was legally settled at the time of the birth of such child. In Overseers, etc., of Nippenose Twp. v. Over-

seers, etc., of Jersey Shore, 48 Pa. 402, Chief Justice WOOD-
WARD intimated that the child "perhaps may derive from her
mother a subsequent settlement acquired by her," but the ques-
tion did not arise upon the facts of that case, and therefore was
not decided.  It did arise, however, in Overseers of Lime-
stone Twp. v. Overseers of Licking Twp., 1 Penny. 475, and
it was there distinctly held that the settlement of an illegiti-
mate does not follow the mother when she changes her settle-
ment.  This case was decided in 1881, and the ground stated
in the opinion for the decision, but not expressly stated to be
the only ground, was, that the act of April 27, 1855 only con-
fers upon illegitimate children the capacity to take or inherit
real and personal estate from their mother, but none of the
other rights of legitimate children are conferred upon them.
This decision unquestionably would control the present case,
whether the settlement of the mother of the illegitimate in
Schuylkill county was acquired by the ownership and occu-
pancy of, and payment of taxes upon, a freehold, or by service,
or derivatively from her husband, unless the act of July 10,
1901, P. L. 639, requires a different ruling.  The first section
reads as follows : " That illegitimate children shall take and be
known by the name of their mother, and the common-law doc-
trine of nullius filius shall not apply as between the mother and
her illegitimate child or children.  The mother and her heirs,
and her illegitimate child and its heirs shall be mutually liable
one to the other, and shall enjoy all the rights and privileges
one to the other in the same manner, and to the same extent, as
if the said child or children had been born in lawful wedlock."
We are not prepared to say, in view of the foregoing provisions,
that the settlement acquired by the mother in another district
by her own act would not, under any circumstances, become the
derivative settlement of the illegitimate child.  It is to be borne
in mind, however, that in this case the illegitimate did not re-
move with his mother to Schuylkill county, but remained in
the poor district where he was born, became a charge thereon
before his mother acquired another legal settlement, and before
the passage of the act of 1901, and remained a charge thereon
from that time to the date of removal, which was August 17,
1904.  In general, a person who is chargeable to and receiving
aid as a pauper from one district cannot acquire a settlement

in another so long as that relation exists. Overseers, etc., of Lewisburg v. Overseers of Milton, 18 W. N. C. 141 ; Overseers, etc., of Penns Township v. Overseers, etc., of Selinsgrove, 18 W. N. C. 143 ; Poor District of Lock Haven v. Poor District of Chapman Twp., 22 W. N. C. 114. An apparent exception to this general rule was established by the case of Scranton Poor District v. Directors, etc., of Danville and Mahoning, 106 Pa. 446. It was there held that a man may gain a new settlement by residence and paying taxes in a new district, notwithstanding the fact that during the same time his wife, whom he had abandoned, was receiving relief as a pauper in the district of his former settlement, and that in such case an order is proper for the removal of the wife to the new settlement acquired by her husband. It is argued that upon the same principle the pauper in this case should be held to have acquired a settlement derivatively from her mother in Schuylkill county. We think, however, the cases are plainly distinguishable. In the first place the act expressly declares the rule as to the settlement of an illegitimate child, and in the second place the point for decision in the case last cited was whether the husband could acquire a settlement in another district while his wife was receiving aid as a pauper in the first district, and that question having been determined affirmatively it followed by express direction of the act, that the settlement of the husband became the settlement of the wife. Whatever may be the effect of the act of 1901 as to future cases, we are unable to conclude that its effect was, under the facts of this case, to transfer the legal settlement of the pauper from the place where he was born, and where his mother was legally settled at the time of his birth, to the place in Schuylkill county to which she had removed.

The order and judgment are affirmed.