# Directors of Home for Destitute, Appellant, *v.* Fayette County Almshouse.

*Poor law — Settlement — Removal from jurisdiction — Acts of June 13, 1836, P. L. 539, and April 6, 1905, P. L. 112.*

A person who is chargeable as a pauper in one district and is receiving aid from it, cannot change his residence to another district as long as such assistance continues.

No matter how poor a man may be, so long as he is able to support himself and his family and not likely to become chargeable, he has the right to choose his domicile or remove from one county to another, and thus change his legal settlement. But as regards one who is a pauper and unable to support himself, and who calls on the State for aid and assistance to do so, the State has a right to say how he shall be supported and where, and can require him, while being so supported at public expense, to stay in his last legal settlement, and, if he attempts to go elsewhere, will remove him there.

HEAD, J., dissents.

Argued April 24, 1919. Appeal, No. 153, April T., 1919, by plaintiffs, from judgment of Q. S. Westmoreland Co., Feb. T., 1917, No. 12, dismissing petition in the case of the Directors of a Home for the Destitute of the County of Westmoreland, Directors of the Westmoreland County Poor District, v. The Fayette County Almshouse, alias Dictus, The Directors of a Home for the Destitute of the County of Fayette. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Petition for citation to compel the directors of the Home for the Destitute of the County of Fayette to contribute to the support of certain paupers and compel their removal to Fayette County. Before COPELAND, P. J. of O. C., specially presiding.

The facts are stated in the opinion of the Superior Court.

492 DESTITUTE HOME *v.* FAYETTE CO. ALMSHOUSE.

Assignment of Error—Opinion of the Court. [72 Pa. Superior Ct.

The court refused the citation and entered a decree dismissing the petition.

*Error assigned* was the order of the court.

*Charles C. Crowell,* for appellants, cited: Poor District of Beaver Township v. Poor District of Rose Township, 98 Pa. 636; Juniata County v. Overseers, 22 Pa. Superior Ct. 193; Scranton Poor District v. Directors of the Poor, etc., 106 Pa. 446; Huston Township v. Benezette Township, 135 Pa. 393; Act of April 5, 1905, P. L. 112.

*Lee Smith,* for appellee.

OPINION BY KELLER, J., July 17, 1919:

This court has already decided that the Act of June 13, 1836, P. L. 539, relating to the support and employment of the poor, is not repealed by the Act of April 6, 1905, P. L. 112, providing for the relief of poor persons, regulating their settlement in poor districts, and providing a means of enforcing the removal of a poor person to the district of his settlement, etc.; that the later act only declares an additional mode of acquiring a settlement in a poor district, and enacts an additional and alternative method of procedure for the removal of a pauper to the district of his last legal settlement: Aylor's Case, 55 Pa. Superior Ct. 210; Westmoreland Co. Poor Dist. v. Kiskiminetas Twp. Poor Dist., 54 Pa. Superior Ct. 584; Williamsport Overseers v. Eldred Twp. Overseers, 54 Pa. Superior Ct. 62; Phila. v. Miller, 42 Pa. Superior Ct. 471. It follows, therefore, that the legal principles established in the construction of the Act of 1836, as to the rights and disabilities of a pauper, and the obligation to support him resting upon the district of his last legal settlement, must also be applied in the construction of the Act of 1905, for it is unthinkable that a man's rights, or the duty or obligation of a poor district, relative to his support, should vary according as one method of

procedure to enforce his removal, or another, might be adopted.

It was decided by the Supreme Court, in construing the Act of 1836, that a person who is chargeable to, and receiving aid as a pauper from, one district, cannot acquire a settlement in another district so long as that relation exists: Overseers of Lewisburg v. Overseers of Milton, 18 W. N. C. 141; Overseers of Penns Twp. v. Overseers of Selinsgrove, 18 W. N. C. 143; Overseers of Washington Twp. v. Overseers of East Franklin Twp., 3 Penny. 108; Poor District of Lock Haven v. Poor District of Chapman Twp., 22 W. N. C. 114; Lawrence Overseers v. Delaware Overseers, 148 Pa. 380. By the same rule, as long as Clement Etling was receiving aid as a pauper from Fayette County, which, for years, had been his legal settlement, he could not, by residing in Westmoreland County for one year, acquire a new settlement therein.

The appellee lays great stress upon the fact that the provisions of the Act of 1905 expressly apply to "any person," the language being: "That a legal settlement may be gained in any poor district by any person, married or single, who bona fide comes to inhabit therein and continues to reside therein for one year." But precisely the same words, "any person," were used in the Act of 1836. That act prescribed eight different methods by which a settlement might be gained in any poor district. The third was: "A settlement may be gained in any district . . . . . . by any person who shall bona fide take a lease of any real estate of the yearly value of ten dollars, and shall dwell upon the same, for one whole year, and pay the said rent." Nevertheless it was held in Overseers of Lewisburg v. Overseers of Milton, supra, that a pauper who is settled upon a district and receiving aid from it as such cannot, while the relationship continues to exist, remove into another district and acquire a settlement there through his own exertions, together with the aid furnished him by the township where he is chargeable, by

renting a tenement of the yearly value of ten dollars, and residing therein one whole year and paying said rent. Evidently under such circumstances his taking a lease of a dwelling could not be bona fide, for the court below, BUCHER, P. J., in an opinion adopted by the Supreme Court said: "No one would pretend that he could have obtained a settlement in Milton if the rent had been paid for him by the overseers of East Buffalo, whilst he was a pauper on the township, for the fraud would have been too apparent. It is equally clear that they could not do this indirectly so as to give him a settlement at Milton."

So the sixth method provided by the Act of 1836 was: "A settlement may be gained in any district......by any person who shall be duly bound as an apprentice by indenture, and shall inhabit in the district, with his master or mistress for one whole year." Yet, in Poor District of Lock Haven v. Poor District of Chapman Twp., supra, this was held not to be applicable to a pauper minor chargeable to a poor district and indentured as an apprentice by the overseers of said district to a man who removed to another township and inhabited there with said apprentice for one whole year and upwards.

In conformity with these decisions, we hold that the residence in a new district of a person who is chargeable as a pauper to another district, and is, at the time receiving aid from it, cannot be bona fide within the meaning of the Act of 1905, and does not affect his last legal settlement so long as such assistance continues. To hold otherwise would create an intolerable condition, for by encouraging a pauper to remove into another district and surreptitiously assisting him therein for one year, a poor district could relieve itself of the burden imposed on it by law, and fasten it upon its neighbor, which would be without notice of the pauper's impoverished condition; and the effect upon the pauper would be even worse, for there would be an incentive to keep him constantly on the move.

In the present case, Clement Etling was admittedly a pauper, and the aid given by Fayette County, both before and after his removal to Westmoreland County was given directly to him, thus distinguishing this case from Scranton Poor Dist. v. Danville Poor Dist., 106 Pa. 446, where the husband who gained a new settlement was not a pauper, but aid had been given his insane wife, who had been abandoned by him, and Canaan Twp. v. Covington Twp., 54 Pa. Superior Ct. 25, where the wife was supported in a State hospital for the insane at the expense of the township, but the husband, who acquired the new settlement had received no aid and was not himself a pauper.   In the last-mentioned case, decided in 1913, Judge RICE distinctly recognized the decisions of the Supreme Court above mentioned as being still the law.

The appellee contends that Etling had the right to choose his own domicile and could not be restrained from doing so.  No matter how poor a man may be, so long as he is able to support himself and his family and not likely to become chargeable, he has the right to choose his own domicile or remove from one to another, and thus change his legal settlement.  But as regards one who is a pauper and unable to support himself, and who calls on the State for aid and assistance to do so, the State has a right to say how he shall be supported and where, and can require him, while being thus supported at public expense, to stay in the place of his last legal settlement, and if he attempts to go elsewhere, will remove him there.   The Act of 1905 itself, providing as it does, a more expeditious method of enforcing such removal, is conclusive on this point.

We are of opinion that as Clement Etling was, when he removed to Westmoreland County on April 1, 1915, a pauper chargeable to Fayette County, and continued to receive aid as such from Fayette County during the entire first year of his residence in Westmoreland County, he gained by such residence no legal settlement in Westmoreland County, and the petitioners having acted

promptly thereafter to secure his removal to Fayette County, the order of removal should have been granted. The assignments of error are sustained, the decree is reversed at the costs of the appellee, and the order of removal prayed for is granted, and the record is remitted to the court below that the cost of the proceeding, the expense of such removal, and the proper charges of the petitioners for the relief of said poor persons may be ascertained and allowed by the court.

DISSENTING OPINION BY HEAD, J.:

I find myself unable to agree that the conclusion reached by the majority opinion is sound. It seems to me the interpretation given to the Act of 6th April, 1905, P. L. 112, and especially the first broad enacting clause thereof, denies to the statute the force its very language imports and leaves the unfortunate pauper, dependent on public aid for his existence, without power to acquire a legal settlement in any district other than the one first chargeable with his support.

I cannot see that there is involved any question whether or not the Act of 1905 repeals the Act of 1836. The affirmance of the order of the court below necessitates no such inquiry. The earlier act, in eight separately numbered clauses of section 9, declares that many differing conditions under which "a settlement may be gained in any district." No one of them dealt with a situation where the pauper, dependent for his existence on public aid from some source, voluntarily sought to acquire a new settlement. We may concede the decisions under that act distinctly declared that as long as a pauper was in the receipt of aid from a district upon which he was legally chargeable, he was without power to acquire a settlement elsewhere. In Overseers of Lewisburg v. Overseers of Milton, 18 W. N. C. 141, the court below thus stated the exact point decided, in language adopted by the Supreme Court: "So long as he was a pauper, chargeable to and receiving aid from East Buffalo, it was im-

possible for him to obtain a settlement in Milton. Emancipation from this state was necessary to give him power to obtain a new settlement." Given a case where an attempt at emancipation meant the certainty of starvation, the victim of misfortune or disease was as firmly shackled to one locality as if he had been sentenced to spend his life there as a punishment for crime.

Is it inconceivable the legislature might, at some time, determine to ameliorate that hard condition? It is my conviction that laudable purpose was accomplished by the Act of 1905. "Be it enacted, etc. That a settlement may be gained in any poor district, by any person married or single, who bona fide comes to inhabit therein and continues to reside there for one year." Can it be successfully urged that language needs any construction to make clear its meaning? Does it not apply as well to a pauper receiving aid as to another? Does it not enable him to have a choice as to the locality where he may reside with the least discomfort and unhappiness, even though, through no fault of his own, he must still be helped to maintain his existence? He must have a legal settlement somewhere. The statute plainly declares he himself may change it. It does not proclaim in letter or, as I think, in spirit, that in order to exercise this right he must give up the old settlement, and the necessities of existence coming therefrom during the period of time that must elapse before he can be finally established in his new settlement. To so conclude seems to me to hold there was neither purpose nor effect in the broad enactment I have quoted. Is it going too far to assert that, in construing language that plainly speaks its own meaning, there has been written into the statute just what would keep the law as it was before, rendering its first broad enactment a mere declaration of something already existing? Judicial interpretation of obscure language in a statute is a necessary and beneficial function of the courts; but where the legislator has spoken clearly the

duty of the courts is to administer the law as it is written.

The learned court below has found as a fact that the person in question had complied with every condition named in the statute, and I cannot doubt the correctness of the resulting conclusion that a legal settlement in Westmoreland County had been acquired. I would affirm the order or decree appealed from.