# Westmoreland County Poor District's Appeal.

*Residence—Settlement—Removal — Absence — Change of residence.*

Absence for more than three years from the district, where a family had an established residence, does not of itself change the place of legal settlement. Temporary residence elsewhere, with no

intention of remaining away, does not remove the residence of a family from the district where they had an established settlement. Temporary residence and employment of the husband and father in another state does not constitute a removal of his family from the district where they formerly resided.

*Poor law—Residence—Liability of district—Removal—Expense.*

The poor district where a family had an established residence is liable for the expense of their removal from another district, where they have become a charge upon the community, even though they have been absent from their home district more than three years.

*Poor law—Petition for removal—Costs of the proceeding—Expense of removing—Counsel fees—Act of April 6, 1905, P. L. 112.*

The Act of April 6, 1905, P. L. 112, expressly limits the recovery by a poor district, petitioning for removal of a pauper, to its expense of relief and removing, and the costs of the proceeding. Counsel fees are not a part of either "expense of removing" or "costs of the proceeding" and cannot be allowed.

Argued April 14, 1921. Appeal, No. 57, April T., 1921, by the Poor District of Westmoreland County, from decree of Q. S. Armstrong County, June Sessions, 1920, No. 4, ordering and directing removal, in the case of In re: Removal of Mrs. Sarah Viola Barr, and minor children, from the Poor District of Kittanning Borough to the Poor District of Westmoreland County. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Modified and affirmed.

Petition for order of removal. Before KING, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered the following decree:

And now, July 6, 1920, the proceedings in this cause being regular and pursuant to the Act of 1905, P. L. 112, after a full hearing and due consideration, it is adjudged that the Poor District of Westmoreland County, Pennsylvania, is the last place of legal settlement of Sarah Viola Barr and her minor children, who were regularly and legally adjudged and are hereby so adjudged poor persons in need of relief and were so at the time the

order of relief aforesaid was issued and delivered into the hands of the poor authorities of the Poor District of Kittanning Borough. It is further ordered, adjudged and decreed that the said overseers of the poor of the Poor District of Kittanning Borough remove the said Sarah Viola Barr and her minor children to the Poor District of Westmoreland County and deliver them with a certified copy of this order, to the poor directors of said Westmoreland County Poor District, who are hereby directed and required to take them in charge and provide for them as their necessities require; and it is further ordered that the Poor District of Westmoreland County pay to the Poor District of Kittanning Borough, the sum of two hundred and ten and 59/100 ($210.59) dollars, being the amount expended by said district for the relief of said poor persons since the date of the notice given, January 22, 1920, to the time of the hearing and the further sum of twenty-five ($25) dollars as and for counsel fees in these proceedings, together with the costs of removal and costs of their proceedings.

*Error assigned* was the decree of the court.

*Charles C. Crowell,* for appellant—A wife's settlement follows that of her husband: Poor District v. Poor Districts, 4 Pa. Superior Ct. 16; Cumberland County Directors v. Overseers, 7 Pa. Superior Ct. 303; Canaan Township v. Covington Township, 54 Pa. Superior Ct. 25; Scranton Poor District v. Directors, 106 Pa. 446.

*H. N. Snyder,* for appellee.—Evidence and rulings of the court below which have not been specifically excepted to and brought upon the record, cannot be considered by the appellate court: Overseers v. Overseers, 2 Pa. Superior Ct. 397; Spring Township v. Walker Township, 1 Pa. Superior Ct. 383.

An inhabitant is one who dwells in a place with the intention of making it his home: Noyles Township Poor

District v. Chapman Township, 21 District Reports 667; Davidson Township v. Shrewsbury Township, 62 Pa. Superior Ct. 613.

OPINION BY PORTER, J., October 7, 1921:

This is an appeal from an order of the Court of Quarter Sessions of Armstrong County, for the removal of Mrs. Barr and her minor children, who had become public charges, from the Poor District of Kittanning Borough to the Poor District of Westmoreland County, in a proceeding under the provisions of the Act of April 6, 1905, P. L. 112. The court below found the facts substantially as follows: Prior to September, 1916, the said Annie Barr and her husband had a legal settlement in the Poor District of Westmoreland County, Pennsylvania; that in September, 1916, the husband and wife, with their children, went to East Brady, Clarion County, where Mrs. Barr and the children stayed with her relatives for about eight months, during which time she did not have a home of her own and did not engage in housekeeping for herself and family; that she remained there as a mere sojourner, not intending to establish a permanent home. Her husband having accompanied her to East Brady then went to the State of Oklahoma where he had previously been engaged in work, which consisted in dressing tools in oil well drilling. Mrs. Barr and the children, after the expiration of said eight months, went to the home of her aunt, at Canton, Ohio, and stayed there three months. She then returned to East Brady, having secured employment in a restaurant at that place and resided in said restaurant with her children for a period of seven months. "The only period of time that she resided in East Brady, from which it can at all be found or inferred that she intended a permanent home, was during the seven months, immediately after her return from the State of Ohio." She then removed, with the children, to the Poor District of Perry Township, Armstrong County, Pa., on July 6, 1918, and

resided there with her children until April 15, 1919, when she removed to the Poor District of Kittanning Borough, where she kept house with her children until sometime in October, 1919, at which time the family were stricken with scarlet fever, and, after regular proceedings, an order of relief was issued and placed in the hands of the poor authorities of Kittanning Borough, who pursuant thereto, provided and furnished the necessary relief. The mother and children continued to require the assistance of the poor authorities and in January, 1920, the poor authorities of the Poor District of Kittanning Borough notified the poor law officers of the Poor District of Westmoreland County that Mrs. Barr and her children had applied for relief, and became public charges, and that their last settlement was in the Poor District of Westmoreland County. The poor law officers of Westmoreland County denied liability and refused to receive the paupers, whereupon the poor law officers of the Poor District of Kittanning Borough instituted this proceeding. The court found that the last legal settlement of Mrs. Barr and her children was in the Poor District of Westmoreland County; that she had not gained or acquired a legal settlement since leaving said poor district, and that said poor district is now her last place of legal settlement. It entered a degree that Mrs. Barr and her children be removed from the Poor District of Kittanning Borough to the Poor District of Westmoreland County; and that the poor directors of the said Poor District of Westmoreland County pay to the petitioner the costs of the proceeding, the expense of removal and the proper charges for the relief of the paupers from the date of the notice; all of which expense, costs and charges were duly ascertained by the court. The Poor District of Westmoreland County appeals from that order.

The appellant contends that the settlement of Mrs. Barr and her children was either in the Poor District of Clarion County, or in the State of Oklahoma. We have

carefully considered the evidence and are of opinion that it fully sustains the finding of fact by the court below. The suggestion that the court should have found that the settlement of the Barrs was in the Poor District of Clarion County is based on the testimony as to the residence of Mrs. Barr and the children in that county during the period that the court below found she was there merely as a sojourner without any intention of ever establishing her home there. This refers to the period of eight months during which she was living among her relatives there, immediately after leaving Westmoreland County. The learned counsel representing the appellant contends that, so far as Clarion County is concerned, the only way in which Mrs. Barr could have gained a settlement there was by a bona fide residence; saying in his brief: "We might add that no other way of gaining a settlement, except that by bona fide residence appears in, or is suggested by the testimony." This manner of acquiring a settlement is provided by the 1st section of the Act of April 6, 1905, P. L. 112, as follows: "That a settlement may be gained in any poor district by any person, married or single, who bona fidely comes to inhabit therein and continues to reside there for one year." The evidence would not have warranted a finding that Mrs. Barr had, during this first period any intention of making her home in Clarion County. She was visiting among her relatives, was visited by her husband from time to time and regarded her stay there as temporary. She said, in her testimony, "I had been staying round among my relatives over in East Brady. I had been there about eight months. I just stayed there. I didn't live there." She testified as to the circumstances under which she then went to the State of Ohio, as follows, in answer to a question by the court: "Q. You are asked the question when you went to Ohio whether your intention in going there was to live there; A. No, I went there to have a place to stay. My father and the children could not get along very well together and my aunt was

there and she said come with me and stay. I stayed there three months and my mother wrote that she had got this job for me and I went back to East Brady to run the restaurant." There was no evidence from which it could be inferred that her husband had ever established a residence or acquired a settlement in Clarion County. In answer to a question by counsel, she said: "Q. When you went to Ohio to live with your aunt, you went to live with her expecting to stay with her until you could get some other place? A. Well, until I could get some place else because I could not get along with my people on account of the children." This testimony makes it clear that, although she did not intend to live with her aunt in Ohio, she did not intend to continue staying with her relatives in Clarion County, Pennsylvania. Having thus left Clarion County, after a temporary residence of eight months, without the intention of returning, those eight months cannot be added to the time when she subsequently did really reside there, in order to make up the one year necessary to acquire a settlement. When she obtained employment, at running the restaurant, in Clarion County, she lived with her children at the restaurant for seven months, at the end of which period she was visited by her husband who assisted her to remove from Clarion County and take up housekeeping in the Poor District of Perry Township, Armstrong County. The visit of the husband at that time continued for the period of three months, during which he lived with his family. Neither Mrs. Barr nor her husband ever acquired a legal settlement in the Poor District of Clarion County. She removed from the Poor District of Perry Township after having lived there only nine months, and from there removed to the Poor District of Kittanning Borough, where in about six months she and her children were stricken with scarlet fever and this misfortune compelled them to seek relief of the poor authorities. They had not then acquired a legal

settlement in either of the poor districts of Armstrong County in which they had for short periods resided.

There is no evidence in the case from which it could be inferred that the husband of Mrs. Barr had, after leaving Westmoreland County, acquired a settlement in the State of Oklahoma or elsewhere. He was a blacksmith who had taken up the special branch of sharpening tools used in the drilling of oil wells, and he was simply following the operations in the field. He had continued to contribute to the support of his family until within two months prior to the time when misfortune befell them, but had not been heard of since that time. The court did not err in finding, under the evidence, that the last legal settlement of Mrs. Barr and her children was in the Poor District of Westmoreland County.

The court in addition to ordering the appellants to pay to the petitioner the proper charges for the relief of the woman and children from the date of the notice; the expenses of removal and the costs of the proceedings, ordered that the appellant pay the sum of $25 as counsel fees in these proceedings. The Act of June 13, 1836, section 20, empowered the court in appeals in a case of settlement to "order to the party in whose behalf such appeal shall be determined,......such costs and charges as the said court shall consider reasonable and just to be paid by the overseers or other persons against whom such appeal shall be determined." It was held, under this statute, that the term "charges" includes something more than costs technically so called and that the court of quarter sessions might, in its order, include a reasonable allowance for necessary professional services: Overseers v. Overseers, 11 Pa. Superior Ct. 215. The Act of April 6, 1905, section 3, provides that, in proceedings under that statute, the court "shall require the directors or poor law officers of the place of settlement to pay the petitioners the costs of the proceeding, the expense of removing and the proper charges for the relief of the poor person from the date of the notice first above

provided for." It thus appears that the earlier statute invested the court with a wide discretion to determine what "costs and charges" should be imposed upon the district to which the pauper was removed, while the Act of 1905, under which this proceeding was brought, definitely specifies the nature of the charges that the poor district to which the pauper is removed may be required to pay. The "costs of the proceeding" are such as are legally taxable, that is, authorized by statute, and do not include counsel fees. "The expense of removing, and the proper charges for the relief of the poor person," cannot be construed to mean counsel fees in the legal proceeding, for the terms of the imposition clearly imply that it is to be confined to the actual expense of properly maintaining and removing to his place of settlement the poor person. Had the legislature intended to empower the court to allow counsel fees in the proceeding or other "charges" which in its discretion it deemed just that the poor district should be required to pay, it is reasonable to assume that it would have used the language employed in the Act of 1836. We are of opinion that the Act of 1905 does not empower the court to require a district to which a poor person is removed to pay counsel fees in proceedings under that statute. The order of the court below must, therefore, be modified by striking therefrom the allowance of counsel fees.

The order of the court below is modified by striking therefrom the allowance of $25 as counsel fees, and, as modified, is affirmed.