# Central Poor District v. Nescopeck Poor District

*R. L. Coughlin*, for petitioner.
*C. W. Dickson*, for respondent.

COUGHLIN, J., February 6, 1935.—This is a petition by the Central Poor District of Luzerne County, praying for an order removing Clemuel Iddings and family to respondent district, the Nescopeck Borough Poor District, and for reimbursement for expenses and maintenance to date.

These are the facts as disclosed by the testimony:

1. Hearing in this case was held July 31, 1934, but disposition of the issue was deferred until counsel for respondent and petitioner filed their briefs, which are now before us.

2. The persons involved are Clemuel Iddings and wife, Carolyn, and minor children, Delbert and Arthur Iddings.

3. At the time of the hearing, Mr. Iddings, wife and two minor children resided in the City of Wilkes-Barre in a rented property, the rent for which, according to Iddings himself, had not been paid for practically a year. The rent was $20 a month, and eviction had been threatened by Mr. Fenner in April, 1934.

4. According to Iddings, he came to live in Luzerne County, within the petitioner's district, in the month of December 1932.

5. Before coming to the City of Wilkes-Barre in December 1932, Iddings had resided within Salem Town-

ship, Luzerne County, Pa. Prior thereto he had resided in Nescopeck Borough. As a resident of Nescopeck Borough, and while there, he had applied for relief. He received that aid from Nescopeck Borough while living in Salem Township, by virtue of an agreement between the authorities in Salem Township and the poor district authorities in Nescopeck. He had removed from Nescopeck into Salem about April, 1931. A bond was given by Nescopeck Poor District to protect the Salem district from obligation by reason of Iddings' continued residence therein, Nescopeck Poor District paying the relief.

6. Though he had applied for relief in Nescopeck Borough, having been evicted from his house before he obtained the relief, he found a place to live in Salem Township, referred to by the Director of the Poor of Salem Township, in his testimony, as a place not really fit to be in. The Borough of Nescopeck, recognizing its obligation, gave Salem Township a bond and paid for his relief, though residing in Salem Township.

7. Having moved to the City of Wilkes-Barre in the Central Poor District in December, 1932, the Iddings family, in June, 1933, were in need of relief. They made application therefor at the office of the Central Poor District, which was, at that time, in charge of distributing emergency relief.

8. From June, 1933, to September, 1933, relief was granted to the extent of $72 through the Central Poor District, but out of the funds of the State emergency relief. In September, 1933, the State Emergency Relief Board having been created for the purpose of taking care of unemployed families, the Iddings family was turned over to it for further relief. No funds came directly from the Central Poor District treasury for this purpose.

9. Iddings has a son, Thomas, living or boarding with a Mr. Hughes on Luzerne Street, Wilkes-Barre. Thomas has been away from home for over 6 years. Delbert, who is 18 years old, and Arthur who is 14 years old, reside with Iddings and his wife. The means of support

upon the part of respondent from December, 1932, has been through relief, failure to pay rent, being approximately 13 months in arrears at the time of hearing, and, he testifies, from what his boys earned.

10. Delbert, aged 18 years, according to testimony of Iddings, worked at the Superior Mill from December, 1932, until April, 1933. From April, 1933, he has been in the CCC Camp. Clemuel Iddings, the head of the family, has been unable to obtain employment. He himself says that he would have to have relief from the Central Poor District had he not received help from the emergency relief.

11. The purpose of moving to the City of Wilkes-Barre, in December, 1932, according to the testimony of Clemuel Iddings, was in the hope of securing employment upon his own part, or upon the part of his two minor boys. The extent to which this was successful or unsuccessful is disclosed in the findings of fact hereinabove set forth. There is a further purpose averred that his wife might have access to clinics and that his elder son, Thomas, might board with him. The former is not material to our solving the issue, and the latter did not materialize.

The aforesaid findings of fact include the request for findings of fact upon the part of counsel for respondent. Insofar as they do not, the requests are refused.

In discussing this case it is to be borne in mind that Iddings is to be considered as unfortunate in the position in which he finds himself, as is the case of all persons who become dependent, many, many times through no real fault of their own. On the other hand, this matter must be decided in the light of the law, which is founded upon reason and reasonable solution of problems existing.

The act of assembly controlling this case is the Act of May 14, 1925, P. L. 762, as amended by the Act of May 23, 1933, P. L. 966, section 800 (d) of which provides as follows:

"(d) Except as hereinafter otherwise provided, every adult and every emancipated minor, whether married or

single, legitimate or illegitimate, may acquire a new settlement in any poor district of this Commonwealth by coming *bona fide* to establish a permanent abode therein and continuing to reside therein for one whole year, if such person or minor is of sufficient mental ability to make a bargain, and is not, or does not become, a public charge during said year."

It is obvious that each district must take care of its unfortunates and the same is paid for out of taxation on the theory that it is thereby done at the expense of the more fortunate. The problem is to determine for whom a particular district is responsible. The responsibility is for its own. The latter is meant to be one who has acquired his legal settlement therein. To have acquired that settlement, as evidenced by the foregoing quotation from the law, one must have come to the district in good faith and not become a public charge therein for 1 year. If this were not the law, those dependent might remove from their own district to another district and thereby place a burden upon the latter unjustly, and as a result of purposes and reasons, many of which can be readily imagined.

In this particular case the respondent was a charge in Nescopeck Borough where he applied for relief. Though having found a place to reside in the adjoining district, materials were furnished by said Nescopeck Borough District. This is clearly disclosed by the evidence. The respondent moved in the Central Poor District and within 7 months obtained relief. If this relief was obtained from the Central Poor District, there is no question under the law but that the maintenance of respondent, though it may be through no fault of his own, must be taken care of by the district of his last settlement, i. e., said defendant district, Nescopeck Borough.

He applied to the poor district office but received aid out of the funds of the State emergency relief. Does this bring him within the class of a "public charge"? If it does not, then some persons with legal settlement in

various districts throughout the State or Nation, might come into a particular State, and, through receiving State aid, thereby establish their residence in the new district, and thereby relieve their former district of the responsibility and create an ultimate new burden upon the new district through the receipt of such State aid. The mere statement thus discloses the importance of correctly deciding this in accordance with the law. Otherwise a district instead of being responsible for its own may thus have the responsibility lifted, or some other district responsible for its own may have placed upon it an extraordinary burden, contrary to the intent of the law.

Respondent relies, inter alia, upon the case of Overseers of the Poor of the Borough of Nescopeck v. Overseers of the Poor of the Township of Hollenback, 28 Luz. L. R. Rep. 25, where there was an application for removal of a family pursuant to the aforesaid poor law. The facts in that case, however, were entirely different. There a husband, his wife, and family of twelve children, one over 21, had lived in the Township of Hollenback. The father leased a 50-acre farm in the borough of petitioner, the Borough of Nescopeck, for a year, moved thereon with his family and had planted and cultivated 7 acres thereof with various food crops, including 2 acres of potatoes, 2 acres of sweet corn, 2 acres of field corn, tomatoes, mangoes, cantaloupes, pepper plants, cucumbers, beans, turnips, beets and all kinds of garden vegetables, and in addition thereto had stored in the cellar of his home 250 jars of canned goods and expected to can an additional amount, in all, at least a thousand quarts of foodstuff preparatory for the future and the approaching winter. The court further found that the respondent in that case and some of his children had obtained occasional employment outside of the farm and had sufficient food products stored in their home and growing upon the farm to provide for them during the coming winter.

In the discussion it was conceded that the legal resi-

dence was in the Township of Hollenback. It was further stated by the court ·that respondent had obtained $2 worth of flour, payment of which was tendered back, and that petitioner was the owner of an automobile truck with which he worked for others. The court therein found that the respondent should be allowed to remain upon the farm, he not being liable to become a "charge" upon the petitioning district. This case can. hardly rule the case at hand.

Williamsport v. Eldred Township, 54 Pa. Superior Ct. 62, is cited. This quite clearly is authority for general principles to which there can be no opposition. It decides that the burden of proof is on the petitioning district to show at least legal settlement of the respondent is in the township to which removal is sought. It is authority also as to the form of the order.

It is well settled that a person, if chargeable and receiving aid from one district, cannot acquire a settlement in another district, as long as that relation exists: Overseers of Lewisburg v. Overseers of Milton, 18 W. N. C. 141; Overseers of Penns Township v. Overseers of Selinsgrove, 18 W. N. C. 143; Overseers of Washington Township v. Overseers of East Franklin Township, 3 Penny. 107; Poor District of Lock Haven v. Poor District of Chapman Township, 22 W. N. C. 114; Lawrence Overseers v. Delaware Overseers, 148 Pa. 380, cited in respondent's brief; and if it has ceased in one district, and one removes to another to reside and continues for more than a year in good faith, a new settlement is established, provided the individual does not become a "public charge" during the first year of his residence in the new district. If aid had been received in June from the poor district a new settlement was not acquired by the respondent in the petitioning district. Does the fact that he received that aid out of funds of the State emergency relief change the situation? Or in other words, whether through receipt of State aid a person may maintain himself in a new district as one coming to reside there in good faith

and not a "public charge". We think not, since in contravention of the statute, by receiving aid he became a "public charge" during said year, and further, it would lead to the destruction of the principle that each district must take care of its own, unless residence or settlement is changed, as provided for in the aforesaid quoted statute.

It is well settled that the person who is an indigent, living in one district, cannot, while a public charge, move to another district and establish a residence: Clinton County v. Clearfield County Poor District, 38 Pa. C. C. 451, 455 (1911); Directors of Home for Destitute v. Fayette County Almshouse, 72 Pa. Superior Ct. 491 (1919). Furthermore, absence from a district does not of itself change the place of legal settlement: Westmoreland County Poor District's Appeal, 77 Pa. Superior Ct. 402.

The real substance of the issue here is whether or not the receipt of State relief aid prevents a person from gaining a settlement, or whether the receipt of relief out of moneys furnished by the State emergency relief is the same as though it had been furnished by the poor district, as such a receipt of relief affects the question of acquiring a new residence by residing therein without becoming a public charge for one year. We find no cases upon this subject. It is quite natural that we should not, due to the State relief aid being a new necessary creation as a result of the present unfortunate conditions. There is nothing in the receipt of State relief aid that in any way does or should penalize the recipient. On the other hand, it should not and cannot be used as a means of establishing a new settlement, thus transferring future responsibility and fixing burdens on others.

In considering this question one must bear in mind the individual having a settlement in some of the districts of this county, the responsibility of that district for said individual and the manner in which he may acquire a new settlement in another district and the persons in the re-

spective districts more fortunate upon whom rests the responsibility for the less fortunate. The basis of the State relief is that it assists all respective districts in meeting the present problem of depression. The settlement in any district is not changed through such relief, nor can it be used as an instrument by which to change such settlement. Receipt of such aid within a year, in a new district, to which dependent may have moved prevents him from acquiring a new settlement. He may continue to receive that aid, but at the same time his settlement continues in the district of original or last settlement, in this case Nescopeck Borough. We deem we have no other course, therefore, than to grant an order of removal. Perhaps the practical solution of this present problem may lie in the suggestion contained in a letter dated June 21, 1933, addressed to the Central Poor District of Wilkes-Barre, Pa., by John A. Hower, Sec., Overseers, W. L. H.

"Yours at hand of June 15 and in reply would say that the Iddings case belongs to Nescopeck Borough. Do the Iddings get relief from the State or is your district giving them aid, if they are on the State Emergency Relief and not giving your district any trouble of any account, we would suggest that you let them remain in your district for a period of time, until we can get house for them. Cheap houses are scarce just now.

"Please let us hear from you as to your position in the matter.

"Trusting this is satisfactory."

While an order of removal is hereby entered establishing the settlement of the respondent, a bond or agreement upon the part of Nescopeck Borough might be arranged, permitting the indigent person and his family to remain in Wilkes-Barre, Nescopeck Borough recognizing its responsibility as the place of settlement. Therefore, in accordance with the above we enter the following order:

We conclude as a matter of law:

1. That Clemuel Iddings and family had a legal settle-

ment in the year 1932 in the Borough of Nescopeck, Luzerne County, Pa.

2. That the said Clemuel Iddings moved to the City of Wilkes-Barre in December 1932.

3. That in June 1933, he received aid, being paid from the emergency relief funds administered through the Central Poor District of Luzerne County.

4. Testimony shows that he became a "public charge" during the year 1933, and has continued subsequently, through inability to get work, and did not acquire a new settlement in the City of Wilkes-Barre.

5. That the present legal settlement of the said Clemuel Iddings is in Nescopeck Borough, Luzerne County. Therefore,

In accordance with the aforesaid conclusions of law, we do order and direct the Poor Directors of the Borough of Nescopeck, Luzerne County, Pa., to receive, and the Central Poor District of Luzerne County to deliver to said Nescopeck Borough Poor District, said Clemuel Iddings and family. Actual physical removal may be substituted by said respondent poor district furnishing a bond to the Central Poor District of Luzerne County to bear and pay any expense incurred by the petitioning district until such time as residence may be found by said respondent poor district within its territory.